UNITED STATES DISTRICT COURT OFFICE
DISTRICT OF MASSACHUSETTS

2005 NOV 17  P 3: 24

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| CHARLES ROBINSON, | * |
| Plaintiff | * |
| | * |
| vs. | *    C.A. NO. 04-11964-NG |
| | * |
| TELESECTOR RESOURCES | * |
| GROUP, INC., D/B/A VERIZON | * |
| SERVICES GROUP, | * |
| Defendant | * |

## PLANTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### SUMMARY JUDGMENT STANDARD:

The plaintiff relies upon the Supreme Judicial Court case of Blare v. Husky, 419

Mass. 437 (1995). It articulates the standard of a Summary Judgment Motion in an

employment age discrimination matters by stating that Summary Judgment is a

disfavored remedy in the context of discrimination cases based on disparate treatment.

Brunner v. Stone & Webster Eng'g. Corp.,  413 Mass. 698, 705, (1992) ("where motive,

intent or other state of mind questions are at issue, summary judgment is often

inappropriate"), quoting Flesner v. Technical Communications, Corp., 410 Mass. 805,

809, 575 N.E.2d 1107 (1991), because the ultimate issue of discriminatory intent is a

factual question,

Anderson v. bessemer City, 470 U.S. 564, 572-573,  (1985) (issue of intent in Federal discrimination cases is a question of fact).

The ultimate question of the defendant's state of mind is elusive and rarely is established by other than circumstantial evidence, Wheelock College v. Massachusetts Comm'n. Against Discrimination, 371 Mass. 130 (1976), which requires the jury to weigh the credibility of conflicting explanations of the adverse hiring decision.

Probative discriminatory remarks are ordinarily not be judged as matter of law in employment discrimination case; they are for the jury to assess.  M.G.L.A. c. 151B, § 4, subd. 1B. Brownville v. Kanzaki Specialty Papers, Inc., 44 Mass. App. Ct. 408.

The party moving for summary judgment has the burden of demonstrating that there are no genuine issue as to any material fact, and that he is entitled to judgment as a matter of law, Foley vs. Matulewicz, 459 NE 2d 1262

Fact finding has no place in the consideration of a motion summary judgment, Boston Seamen's Friend Society vs. Rifkin Mgt. 475 NE 2d 401.

A party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on the issue if the case were to go to trial

Penderson vs. Time Inc., 532 NE2d 1211.

For a moving party to prevail on a motion for summary judgment, that party has the burden of "showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial."  Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). "Plainly, a conclusory assertion that the

2

nonmoving party has no evidence is insufficient," but rather, "a party who moves for summary judgment on the grounds that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record." Id. at 715, quoting Celotex Corp. vs. Catrett, 477 U.S. 317, 32 8-332 (1986).

## INTRODUCTION:

Charles Robinson was employed by Telesector Resources Group, Inc. d/b/a Verizon Services Group, (Hereinafter "Verizon") for approximately thirty (30) years in various positions, promoted several times and was a good, valuable and productive employee.

Charles Robinson was the only team leader terminated by Verizon effective on August 30, 2001. At that time he was 51 years old. He was the oldest white male and the only person retirement eligible. Full retirement eligibility is age related. Verizon retained eleven (11) employees. Of these eleven (11) employees retained, ten (10) were younger than Charles Robinson, not retirement eligible and most if not all were under (40) years of age. Mr. Robinson's duties were transferred to a Verizon internal  temporary, but long term hire who was younger than the plaintiff, Charles Robinson.

Mr. Robinson applied for other Verizon positions and was refused employment by Verizon.

Verizon states that it was reorganizing its units and needed to eliminate one position. Mr. Robinson requested documents to support how Verizon performed this

3

process. Verizon provided only some documents but not the necessary R.I.F. form required. It is incredible that Verizon does not have more documentary proof.

Verizon praised Mr. Robinson for his productivity in memos as late as July of 2001.

The defendant, Verizon requested resumes on July 9th and 10th 2001 <u>after</u> the decision to terminate Charles Robinson was already made on July 1, 2001.

Thus it follows that Verizon terminated Mr. Robinson due to his age and his longevity with Verizon and his retirement eligibility.

Verizon does not indicate what "qualifications" determined its decision to either terminate or retain employees. It either lost or destroyed all documents which would support its stated reasons for termination of Charles Robinson which its own R.I.F. requires to be filled out.

Plaintiff, Charles Robinson was the highest paid, most experienced employee in his department. In fact Verizon's file for plaintiff shows his reviews were all excellent.

Verizon knew plaintiff was fifty-one (51) years old when it terminated him and that age discrimination is illegal.

## I: CHARLES ROBINSON'S CLAIM IS NOT TIME BARRED.

The plaintiff, Charles Robinson filed his MCAD complaint on well within six (6) months of his termination on August 30, 2001.

The plaintiff, Charles Robinson was told that he was not selected for a Team Leader's position and that his employment was going to be terminated thirty (30) days

4

from July 30, 2001 if he could not find alternative Verizion positions. The very latest day of discrimination was August 30, 2001.

Plaintiff's counsel filed the MCAD Complaint and avers under the pains and penalties of perjury that the August 7th 2001 date is a typographical error. (See counsel's signature below)

The Massachusetts Supreme Court case of Ross. vs. Raytheon Co. cited by the Defendant in its Memorandum and attached to its Brief is supportive of the plaintiff, Charles Robinson's position of equitable tolling. Worth quoting for this Court is the entire page 4 of said case herein reproduced.

The plaintiff, Charles Robinson's cause of action for age discrimination states a continuing violation of unlawful discrimination that occurred over the course of several years, and thus, was not precluded by the six month limitations period. M.G.L.A. c. 151B. § 4, subd. 1,5.

Although the limitations clock for a discrimination action generally starts with the commission of a discriminatory act, a true continuing violation rewinds the clock for each discriminatory episode along the way. M.G.L.A. c. 151B, §5.

Where there is a determination of a continuing violation within the statutory limitations period, a complaint with the Massachusetts Commission Against Discrimination (MCAD) is timely filed even though some, or a large portion of the discriminatory conduct may have taken place more than six months prior to the complaint; this rule allows the MCAD to fulfill its statutory obligation of providing an

5

Case 1:04-cv-11964-NG    Document 26    Filed 11/17/2005    Page 6 of 30

Page 4

14 Mass. L. Rep. 27; 2001 Mass. Super. LEXIS 481, *6

Ross relies on the Supreme Judicial Court's analysis in *Wheatley v. American Tel. & Tel. Co., 418 Mass. 394, 636 N.E.2d 265 (1994)*, to assert his argument based on the doctrine of equitable tolling. The central issue in *Wheatley* was the timing of the unequivocal discharge of the plaintiff, because the discharge itself was the subject of the age discrimination inquiry. *Id. at 397.* The Supreme Judicial Court held that the statute of limitations was not triggered at an earlier date because the plaintiff had not been effectively discharged at that time despite the employer's statements that the plaintiff would be terminated if he could not find another position within the company by a later date. *Id. at 398.* However, in the instant case, Ross does not contend that [*7] he was terminated because of his age, but rather that he was passed over for positions in three specific instances in 1997 because of his age. *Wheatley* holds that [HN4] the statute of limitations is only triggered by an unequivocal discharge, and that an individual is not unequivocally discharged if an employer continues to hold out the possibility of employment. *Id. at 398. Wheatley* does not stand for the proposition, as Ross argues, that an individual who is discriminated against in a specific instance can toll the limitations period because he does not want to file a complaint that might prejudice his employer against him in future endeavors. If the law were otherwise, an individual who was the victim of discrimination made unlawful by G.L.c. 151B might choose to wait several years, until the time he parted with his employer, to file a complaint with the MCAD. That kind of delay would clearly contravene the policies which underlie the short six-month statute of limitations.

However, in a footnote in *Wheatley*, the Supreme Judicial Court stated:

We note that *McConnell v. Gen. Tel. Co. of California, 814 F.2d 1311, 1317 (9th Cir. 1987)*, [*8] cert. denied, *484 U.S. 1059, 108 S. Ct. 1013, 98 L. Ed. 2d 978 (1988)*, also treats a "termination" notice that offers the possibility of other employment within the company as tolling the limitation period. See notes 6 and 7, *supra*. Because we conclude that the trial judge erred in allowing [defendant's] motion for summary judgment, we need not discuss the issue of tolling. We comment, however, that a reasonable person who has been informed that his or her employment would be terminated on a specified date if he or she did not obtain another position within the organization by that date might not file an employment discrimination claim during this "transition period" because "the filing of such a charge may prejudice any pending reconsideration of the [termination] decision." *Delaware State Coll. v. Ricks, 449 U.S. 250, 266 n. 2, 101 S. Ct. 498, 508 n. 2, 66 L. Ed. 2d 431 (1980)* (Stevens, J., dissenting).

*Wheatley, supra, at 399 n. 8.*

In *McConnell*, the court held that the [HN5] defendant's representations of possible future employment within the company may toll the statute of limitations under the doctrine of equitable estoppel [*9] when these representations lull the employee into an untimely filing. *McConnell v. Gen. Tel. Co. of California, 814 F.2d 1311, 1317 (9th Cir. 1987).* Additionally, Justice Stevens's dissent in *Delaware State Coll.* argued that an alleged victim of discrimination should not be required to file a complaint during the time period between notice of termination with the possibility of future employment and the actual date of termination. *Delaware State Coll. v. Ricks, 449 U.S. 250, 266, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980)* (Stevens, J., dissenting). This court concludes that the period between November 1997 and September 1998 is not unreasonably long and should be considered a transition period during which the statute of limitations is tolled. In light of Ross's continued attempts at employment within Raytheon during this transition period and the possibility that Ross may have prejudiced his employment efforts had he filed his claim with the MCAD, the limitations period should be tolled until September 4, 1998, the date of his termination. This result is consistent with the reality of the situation: if Ross had been successful in obtaining other [*10] employment with Raytheon, it is highly unlikely that he would have brought a discrimination claim. Ross filed his complaint with the MCAD in November 1998, well within the six-month statute of limitations period. Accordingly, Raytheon's motion for summary judgment as to Count I is *DENIED.*

III. G.L.c. 93

[HN6] To prevail on an age discrimination claim under the Massachusetts Equal Rights Act ("MERA"), *G.L.c. 93, §§ 102* and *103*, the plaintiff must also comply with the procedural requirements of G.L.c. 151B. *Charland v. Muzi Motors, Inc., 417 Mass. 580, 582–83, 631 N.E.2d 555 (1994).* The procedural requirements include the filing of the initial complaint with MCAD within the six-month statute of limitations period. *G.L.c. 151B, § 5.* The purpose of this rule is to ensure that plaintiffs do not attempt to circumvent the filing requirements of G.L.c. 151B by simply filing claims under MERA. *Jancey v. School Comm. of Everett, 421 Mass. 482, 498 n. 14, 658 N.E.2d 162 (1995).* Ross is permitted to assert his MERA claim because, as discussed in the previous section, he has complied with the procedural [*11] requirements of G.L.c. 151B and its statute of limitations provision. As such, Raytheon's motion for summary judgment as to Count II is *DENIED.*

effective remedy for ongoing discriminatory polices by an employer. M.G.L.A. Ch.

151 B.

> A case of this type is subject to two statutes of limitations. A claim
> cannot be brought alleging discrimination under G.L. c. 151B, unless
> it is preceded by the filing of a complaint of unlawful discrimination
> with the MCAD within six months of the alleged act or acts of
> discrimination, G.L. c. 151B, §5.  Thereafter, when certain
> requirements are met, a plaintiff has three years "after the alleged
> unlawful practice occurred" to sue in court. G.L. c. 151B, §9.

> Federal decisions, distinguish between two types of continuing
> violations, "serial" and "systemic". See Carter v. Commissioner
> of Correction, supra at 220, 681, N.E.2d 1255. The first type
> is comprised of an interlinked succession of related events, stemming
> from a common discriminatory animus, with at least one act of
> harassment occurring within the limitations period. See
> Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 183 (1st Circ. 1989).
> The second type focuses on the maintenance of a general practice or
> policy aimed at members of a protected class of employees. See
> Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 14
> (1st Cir. 1998).

Both the Supreme Judicial Court and the Appeals Court have relied on the

continuing violation doctrine to permit plaintiffs to seek damages, if the alleged

events are part of an ongoing pattern of discrimination, and there is a discrete violation

within the six month limitations period to anchor the earlier claims. See Lynn Teachers

Union, Local 1037 v. Massachusetts Comm'n. Against Discrimination,  supra; Carter v.

Commissioner of Correction, supra. See also, Rock v. Massachusetts Comm'n. Against

Discrimination, 384, Mass. 198, 207-208, 424 N.E.2d 244 (1981) (examining facial

validity of MCAD's rule on continuing violations and concluding "there is no literal or

functional inconsistency between the [continuing violation] rule and the [six-months

limitations period], and the rule merely carriers out the scheme or design of [G.L. c.

6

151B]"). Where there is a determination of a continuing violation the statutory limitations period, therefore, a complaint with the MCAD is timely filed even though some, or a large portion, of the discriminatory conduct may have taken place more than six months prior to the complaint. This rule allows the MCAD to fulfill its statutory obligation of providing an effective "remedy [for] ongoing discriminatory policies by an employer." Id. at 207, 424 N.E.2d 244. See Grace Cuddyer v. The Stop & Shop Supermarket Company, 434 Mass. 521 (2001).

## II. THE PLAINTIFF, CHARLES ROBINSON MAKES A VALID VIOLATION OF PUBLIC POLICY CLAIM

Preferential treatment to a Verizon CLEC is illegal pursuant to M.G.L. Chapter 93A §2 and M.G.L. Chapter 93 §4 and is prohibited by its own guidelines. In a similar case to the one at bar, the Massachusetts Superior Court case of Ciardi v. Hoffman-Laroche, LTD., (Botsford) (2001 W.L. 33162197) held that the Antitrust Act and Chapter 93A are separate enactments, although obviously related to each other in some respects. Chapter 93A, is a broad remedial statute, creating new substantive rights. See, e.g. Linthicum v. Archambault, 379 Mass. 381, 383 (1979); Dodd v. Commercial Union Ins. Co., 373 Mass. 72, 78 (1977); Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975).

By its terms, Chapter 93A proscribes unfair or deceptive conduct as well as unfair methods of competition, both are declared unlawful. G.L. Chapter 93A § 2(a). Moreover, the statute expressly states that it is to be construed in accordance with the interpretations of the Federal Trade Commission Acts (FTC Act) by the Federal Courts and FTC. Id. § 2(b). The FTC Act has long been read to offer an additional prohibit anti-competitive

7

conduct that is also covered by the Federal antitrust statutes, and to offer a separate and cumulative avenue of relief against such conduct. See FTC v. Cement Institute, 333 U.S. 683, 693-95 (1948). Accordingly, it is clear that G.L. Chapter 93A, §2 reaches the merits of price-fixing agreements in restraint of trade that the plaintiff alleges in this case, and the defendant does not suggest otherwise.

Chapter 93A has not required plaintiff to be in privity with the persons or businesses against whom or which they have a claim. See. G.L. Chapter 93A, § 9(1), as amended by St. 1979, c. 406, § 1. While there is no specific reference to consumers as indirect purchases in the amended version of § 9(1), they unquestionably are covered by the section's terms. An person, other than a person entitled to bring an action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two. More significantly, the Antitrust Act, G.L. C. 93, § 14A, expressly provides that it is to have no effect upon the provisions of Chapter 93A, except as explicitly provided in said Chapter 93A , and under the only reference to the Antitrust Act in Cahpter4 93A occurs in the business section, § 11 not in §9. What the reference to the Antitrust Act in §11 demonstrates is that if the Legislature intended to limit consumer actions under §9 of Chapter 93A by restrictions that may apply to actions brought under the Antitrust Act, it knew how to effectuate such a purpose. See Boos v. Abbot Labs., 925-8, Supp. 49 D. Mass. (1996).

8

The Appeals Court in Melley v. The Gillette Corporation, 19 Mass. App. Ct. 511,511 13(1985), set out as follows. A finding that certain conduct contravenes public policy does not, in itself, warrant the creation of a new common-law remedy for wrongful dismissal by an employer. The rationale for implying a private remedy under the public policy exception to the traditional rule governing at-will employment contracts is that unless a remedy is recognized, there is no other way to vindicate such public policy. But where there is a comprehensive remedial statute, the creation of a new common-law action based on the public policy expressed in that statute would interfere with that remedial scheme. Also, in Mello v. Stop & Shop Co., 402 Mass. 555, 557 (1988), the Court stated as follows- A basis for common-law rule of liability can easily be found when the Legislature has expressed a public policy position concerning the rights of employees and an employer discharges an at-will employee in violation of the established policy, unless no common-law rule is needed because the Legislature has also prescribed a statutory remedy.

No such statutory remedy exists in the case at bar.

The Supreme Judicial Court of Massachusetts case of Mello v. Stop & Shop Co., 402 Mass. 555(1988) held that an at-will employee who "blew the whistle" within his company on wrongdoing is entitled to protection (even though before discharge he did not complaint to public authorities). Whistleblowing based on a reasonable, good faith (but erroneous) belief that the employer is violating the law should be protected in particular instances.

9

## III. LAW OF AGE DISCRIMINATION SUPPORTS
## CHARLES ROBINSON'S CLAIMS

Plaintiff relies on the United States Supreme Court Case of Reeves v. Sanderson

Plumbing, 530 U.S. 133 (2000) where a discharged employee brought an action against a

former employer, alleging age discrimination in violation of the Age Discrimination in

Employment Act (ADEA). After the jury found for the employee, the United States

District Court for the Northern District of Mississippi, L.T. Senter, Jr., J., 1998 W.L.

1150611, denied the employer's motion for judgment notwithstanding the verdict. The

employer appealed. The Court of Appeals for the Fifth Circuit, 197 F.3d 644, reversed

and rendered judgment for the employer. Certiorari was granted. Justice O'Connor, held

that (1) a prima facie case and sufficient evidence of pretext may permit the trier of fact

to find unlawful discrimination, without additional independent evidence of

discrimination, though such a showing will not always be adequate to sustain jury's

finding of liability, abrogating Fisher v. Vassar College, 114 F.3d 1332 (C.A.2 1997),

Rhodes v. Guiberson Oil Tools, 75 F.3d 676 (C.A.5 1996), Theard v. Glaxo Inc., 47 F.3d

676 (C.A.4 1995), and Woods v. Friction Materials, Inc., 30 F.3d 255 (C.A.1 1994); (2)

in entertaining a motion for judgment as matter of law, court should review all evidence

in the record, abrogating Apraicio v. Norfolk & Wester R. Co., 84 F.3d 803 (C.A.6 1996)

and Simpson v. Skelly Oil Co., 371 F.2d 563 (C.A.8 1967); and (3) there was sufficient

evidence for a jury to find that employer had intentionally discriminated thus supporting

verdict for employee under ADEA.

10

In attempting to meet the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated, an employment discrimination plaintiff must, once the defendant employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, be afford the opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination; that is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that employer's proffered explanation is unworthy of credence. Age Discrimination in Employment Act of 1967, § 4(a)(1), 29 U.S.C.A. § 623(a)(1); Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. §2000e-2(a)(1).

Here, Charles Robinson does so by numerous facts, most glaring of which is the July 1st, 2001 decision to terminate Mr. Robinson and later submission of resumes of all candidates on July 10, 2001. Defendant asserts it was the resumes that shaped the decision to terminate or retain employees which has to be false given the time-line.

It is permissible for the trier of fact in employment discrimination case to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. Age Discrimination in Employment Act of 1967, §4 (a)(1), 29 U.S.C.A.

In Reeves, supra, as is the case at bar there was sufficient evidence for jury to find that the employer had intentionally discriminated, thus supporting verdict for employee

11

under ADEA, where the employee established prima facie case of discrimination,

introduced enough evidence for the jury to reject the employer's explanation for firing

employee, and produced additional evidence of age-based animus on part of the

decision-maker. Age Discrimination in Employment Act of 1967, § 4(a)(1), 29 U.S.C.A.

§ 623 (a)(1).

    The most recent 2005 United States Supreme Court case of <u>Smith v. City of Jackson</u>

<u>Mississippi</u>, 544 U.S. _____ (2005) further clarified plaintiff's burden.

> Judge Stevens, for the court, held that disparate impact theory cases as announced
> in <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424 (1971) applies to age cases and states
> that "Petitioners are a group of older officers who filed suit under the ADEA
> claiming both that the City Deliberately discriminated against them because of
> their age (the "disparate-treatment" claim) and that they were "adversely affected"
> by the plan because of their age (the "disparate-impact" claim). The District Court
> granted summary judgment to the City on both claims. The Court of Appeals held
> that the ruling on the former claim was premature because petitioners were
> entitled to further discovery on the issue of intent, but it affirmed the dismissal of
> the disparate-impact claim. 351 F. 3d 183 (CA5 2003). Over one judge's dissent,
> the majority concluded that disparate-impact claims are categorically unavailable
> under the ADEA. Both the majority and the dissent assumed that the facts alleged
> by petitioners would entitle them to relief under the reasoning of <u>Griggs</u>."

It follows then that a Summary Judgment analysis here must include the

disparate-impact that the Verizon's R.I.F. had on Charles Robinson.

> Judge Stevens went on to state -

> While in our opinion <u>Griggs</u> relied primarily on the purposes of the Act,
> buttressed by the fact that the EEOC had endorsed the same view, we have
> subsequently noted that our holding represented the better reading of the statutory
> text as well. See <u>Watson v. Fort Worth Bank & trust</u>, 487 U.S. 977. 991 (1988).
> Neither §703(2)(2) nor the comparable language in the ADEA simply prohibits
> actions that "limit, segregate, or classify" persons; rather the language prohibits
> such actions that "deprive any individual of employment opportunities or
> otherwise adversely affect his status as an employee, because of such
> individual's" race or age. Ibid. (explaining that in disparate-impact cases, " the
> employer's practices may be said to adversely affect an [individual's status]

12

as an employee" (alteration in original) (quoting 42 U.S.C. §2000e-2(a)(2)). Thus the text focuses on the effects of the action on the employee rather than the motivation for the action of the employer. Griggs, which interpreted the identical text at issue here, thus strongly suggests that a disparate-impact theory be cognizable under the ADEA.

Judge Scalia in his concurring opinion cites the EEOC rules and guidelines and held that "when an employment practice, including a test, is claimed as a basis for different treatment of employees or applicants for employment on the grounds that it is factor other than age, and such a practice has an adverse impact on individuals within the protected age group, it can only be justified as a business necessity." 29 CFR §1625 7(d) (2004).

Finally Justice O'Connor with whom Justice Kennedy and Justice Thomas joined, concurring in the judgment stated "Disparate treatment captures the essence of what Congress sought to prohibit in the [Age Discrimination in Employment Act of 1967 (ADEA) 29 u.s.c. §621 et seq.] It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).

The recent 2005 Massachusetts Supreme Court case of Mary Sullivan v. Liberty

Mutual Insurance Company , 444 Mass. 34 articulated R.I.F. rules in age cases stating

that in cases involving claims of employment discrimination, a defendant employer faces

a heavy burden if it seeks to obtain summary judgment; summary judgment is disfavored

in discrimination cases based on disparate treatment because the question of the

employer's state of mind or discriminatory motive is elusive and rarely is established by

other than circumstantial evidence. M.G.L.A. Chapter 151B, §4.

The disparate-impact theory of employment discrimination addresses employment

practices that are facially neutral but allegedly affect members of a protected class more

13

harshly than those outside the protected class; thus, the disparate-impact theory does not require proof of discriminatory motive.

In reviewing an order granting summary judgment in an employment discrimination case based on the disparate-impact theory, the appellate court applies its traditional test and considers the facts in their light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. M.G.L.A. Chapter 151B, §4.

Because direct evidence of discriminatory animus and causation, as elements of employment discrimination, rarely exists, a plaintiff may establish one or both by indirect or circumstantial evidence using the three-stage, burden-shifting paradigm first set out in McDonnell Douglas Corp. v. Green, M.G.L.A. Chapter 151B, §4.

Although not binding on the Massachusetts Supreme Judicial Court, it has been the Court's practice to apply federal case law construing the federal employment anti-discrimination statutes when interpreting the Massachusetts employment anti-discrimination statutes. M.G.L.A. Chapter 151B, §4.

The three-stage order of proof, under the McDonnell Douglas Corp. v. Green framework, does not circumvent the plaintiff's burden to prove all the essential elements of an employment discrimination claim, but does permit the jury to infer discriminatory animus and causation form proof that an employer has advance a false reason for the adverse employment decision, in the absence of direct evidence that the actual motivation was discrimination. M.G.L.A. Chapter 151B, §4.

14

To meet the initial burden of establishing a prima facie case under McDonnell Douglas Corp. v. Green, supra formulation for establishing discriminatory animus and causation, as elements of employment discrimination, employee simply had to produce sufficient evidence that employer's actions, if otherwise unexplained, were more likely than not based on the consideration of impermissible factors. M.G.L.A. Chapter 151B, §4.

Evidence that the plaintiff employee, who was terminated in connection with the employer's reduction in force, was ranked or evaluated above a younger or male co-worker working in the same position who was not laid off, is indirect evidence of discriminatory intent which will permit the plaintiff employee to establish a prima facie case of age or sex discrimination. M.G.L. A. Chapter 151B, §4.

The first state of McDonnell Douglas Corp. v. Green paradigm, the prima facie case of employment discrimination, should not be the occasion for battling statisticians, especially when the sample sizes are small; the inquiry at this threshold stage is whether a jury, guided by their collective day-to-day experiences with probability, could reasonably conclude from statistical and other indirect evidence that discrimination was more likely than not the reason for the plaintiff's layoff, and the third sate is the more appropriate state for the employer to establish that the plaintiff's statistical evidence is unreliable or not probative of discrimination because  the statistics do not account for factors pertinent to the employer's selection process.

An employee who served inside counsel for insurer established prima facie case of age discrimination, at first stage of McDonnell Douglas Corp. v. Green framework,

15

relating to her termination as part of employers' reduction in force; employer retained lower-rated, younger attorneys with same job classification as 49 year old plaintiff, and five of six attorneys discharged by employer were over 40 years of age. M.G.L. Chapter 151B, §4.

This method has been applied in a modified form for reduction-in-force (RIF) cases. To make a prima facie case in a RIF suit the employee must establish (1) membership in the protected age group, (2) qualification to perform his or her current position and (3) evidence that the employer discriminated on the basis of age in reaching the adverse employment decision. Although replacement is not an essential element of proof for the employee in a RIF case, where an employee is replaced by someone younger or where younger individuals already employed take over the discharged employee's duties, the inference is likely to be most negative against the employer.

See Benson v. Tocco, supra 113 F.3rd at p. 1208. The laid off employee may also establish a prima facie case by showing there was another available position that he or she could have filled. Mitchell v. Worldwide Underwriters Insurance Co., 967 F.2d 565 (11th Cir. 1992).

Plaintiff also relies on the Massachusetts cases of:

1.    Blare v. Husky Injection Molding Systems Boston, Inc., herein reproduced.

2.    Powers v. H.B. South, 42 Mass. App. Ct. 657 (1997)

3.    Cormier v. Pezrow of New England, Inc., 437 Mass. 302 (2002)

16

4. Brownlie v. Kanzaki Specialty Papers, Inc., 44 Mass. App. Ct. 408 (1998).

5. Plante v. Shawmut Bank, (Gantz, J) (1998 W.L. 408895).

6. S. Bent Brothers, Inc. v. Havener (Toomeu, J) (1994 W.L. 879912)

The well reasoned and articulate language therein is best communicated for this court by attaching the cases and incorporating same by reference into this memorandum.

Verizon's proffered reason is that Mr. Robinson was a less qualified

employee yet it produces no documents in support and no Employer Summary Sheets as

required by its own rules. Thus, Verizon does not even offer a legitimate non-

discriminatory reason for Mr. Robinson's termination. It hides its reason. If the defendant

offers no reason, as it does here, the plaintiff must prevail.

Charles Robinson makes a valid prima facie case for Age Discrimination. It is

undisputed that he was terminated and was in a protected class at the time of his

termination. His duties were either assumed by a younger interim employee or younger

Verizon payroll employees.

EEOC Rules and Regulations prohibit

- Making older worker to choose between a layoff without health benefits and little chance of recall and early retirement.
- Using financial incentives to lure older workers into retirement, regardless of their performance.
- Re-deploying younger workers during times of layoffs and reorganization, while eliminating older ones.
- Failing to offer older workers the same flexible work options that are available to younger workers.

17

Once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for its action under the analytical framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed. 2d 668 (1973). The employer must produce credible evidence showing a legitimate rationale for terminating the employee, Wheelock College v. Massachusetts Commn. Against Discrimination, 371 Mass. 130, 134-135, 355 N.E. 2d 309 (1976). McKenzie v. Brigham & Women's Hosp., 405 Mass. 4342, 435, 541 N.E. 2d 325 (1989). To satisfy the shifted burden of production, an employer's reason must be "clear and reasonably specific," Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L. Ed. 2d 207 (1981), and supported by specific facts that would justify a judgment for the employer. Id. at 255 n. 9, 101 S.Ct. at 1094 n. 9.

Mr. Robinson's longevity and attendance at work were impressive. He never missed a day of work. He was never late for work. His reviews were exemplary. The employer's articulated reasons for the discharge were a pretext.

Verizon's reason for Mr. Robinson's discharge was not supported by the evidence and the particular reason given was not the "real reason" for the decision to discharge Mr. Robinson. See Radvilas v. Stop & Shop, Inc., 18 Mass. App. Ct. 431, 439, 466 N.E. 2d 832 (1984).

Mr. Robinson meets the standard articulated in Scotti v. Arrow Electronics, Inc., 37 Mass. App. 954. All that is necessary to defeat Summary Judgment is a "toehold" in

18

the materials relied upon by the plaintiff to warrant a hearing. Mr. Robinson raises issues

of fact for this Court. The case of Kelley v. Airborne Freight, 140 F 3d 335 (Mass.)

(1998) involved the plaintiff losing his job. He was over 40 years of age. The court

stated –

> Under both federal and Massachusetts law, plaintiff must first establish a prima
> facie case of discrimination. McDonnell Douglas Corp. v. Green, 411,
> U.S. 792, 802, 36 L. Ed. 2d 668, 93 s. Ct. 1817 (1973); Blare v. Husky Injection
> Molding Sys., 419 Mass. 437, 646 N.E. 2d 111, 116 (Mass. 1995). The burden of
> production then shifts to the employer to articulate a non-discriminatory rationale
> for its employment action, which rebuts the employee's prima facie case. St.
> Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 125 L. Ed. 2d 407, 113 S. Ct.
> 2742 (1993). Under both Massachusetts and federal law, the plaintiff at all times
> bears the ultimate burden of persuading the trier of fact that the defendant
> intentionally discriminated against him. See id. (quoting Texas Dep't. of Comm.
> Affairs v. Burdine, 450 U.s. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981));
> Blare, 646 N.E.2d at 117.
>
> Federal and state law differ, however, in the role that pretext plays in enabling a
> plaintiff to meet his burden or proving that the defendant intentionally
> discriminated against him. In Hicks, the Supreme Court explained the role of
> pretext in federal discrimination cases that proceed under the McDonnell Douglas
> burden-shifting framework:
>
> The factfinder's disbelief of the reasons put forward by the defendant (particularly
> if disbelief is accompanied by a suspicion of mendacity) may, together with the
> elements of the prima facie case, suffice to show intentional discrimination. Thus
> rejection of the defendant's proffered reasons will permit the trier of fact to infer
> the ultimate fact of intentional discrimination.
>
> Hicks, 509 U.S. at 511 (emphasis added). Thus, under the ADEA, if plaintiff
> establishes that the defendant's proffered reasons for the adverse employment
> action are not the true reasons, the trier of fact may, depending on the overall
> evidence, but is not required, to infer that intentional age-based discrimination
> was a determinative factor in the adverse employment action. See Woodman v.
> Haemonetics Corp., 51 F. 3d 1087, 1091-92 (1st Cir. 1995); see also Kline v.
> Tennessee Valley Auth., 128 F.3d 337, 343-44 (6th Cir. 1997) (collecting cases).
>
> In contrast, "Massachusetts is a 'pretext only' jurisdiction." Blare, 646 N.E. 2d at
> 117; Carter v. Commissioner of Correction, 43 Mass. App. Ct. 212, 681 N.E. 2d
> 1255, 1264 (Mass. App. Ct, 1997). N2 under the "pretext only" standard:

[A] plaintiff who has established a prima facie case and persuaded the trier of fact that the employer's articulated justification is not true but a pretext, is entitled to judgment. Blare, 646 N.E. 2d at 116 (emphasis added) (citing Wheelock College v. Massachusetts Comm'n. Against Discrimination, 371 Mass. 130, 355 N.E.2d 309, 315 (Mass. 1976); see also Lattimore v. Polaroid Corp., 99 F.3d 456, 465 (1st Cir. 1996) (citing Blare). The distinction matters: to prevail under Massachusetts law, a plaintiff carries "his burden of persuasion with circumstantial evidence that convinces the factfinder than the [employer's] proffered explanation is not credible." Id.; see Handrahan v. Red Roof Inns, Inc., 43 Mass. App. Ct. 13, 680 N.E. 2d 568, 573-74 (Mass. App. Ct.), review denied, 425 Mass. 1007, 684 N.E.2d 1198 (Mass. App. Ct. 1997); see also Kline, 128 F.3d at 343 (collecting cases and describing the "pretext only" standard). We recognize that the viability of Blare has been questioned in light of Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128, 686 N.E.2d 1303 (1997). We express no view on the matter.

Even in a "reduction in force" case, the standards are the same. Summary Judgment is not appropriate in employment discrimination cases, which typically turn on the elusive factual question of the employer's intent. See Chertkova v. Connecticut, General Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996). Courts must be especially wary in dismissing employee's charges in discrimination cases, because in such cases the employer's intent is ordinarily at issue"; Gallo v. Prudential Residential Servs., L.P., 22 F.3d 12109, 1224 (2d Cir. 1994). This Commission should lean toward probable cause when, as here, the employer's intent is at issue. Montana, 869 F.2d at 103. Dismissal is ordinarily inappropriate where intent and state of mind are at issue.

The general proposition particularly holds true in discrimination cases like this one that are based on a reduction in force that was allegedly implemented in a discriminatory manner, percentages of those retained under 40 years of age versus percentages of those terminated over 40 years of age as the inquiry in such cases is

20

"highly fact specific." Burger v. New York Institute of Technology, 94 F.3d 830, 833 (2d Cir. 1996).

Mr. Robinson claims Verizon violated Chapter 151B by basing its decision to eliminate him not on his capabilities, but on his age. To meet the de minims burden of stating a prima facie case of age discrimination Mr. Robinson must show that (1) he was a member of the protected age group - i.e., that he is "at least 40 years of age," (2) he was qualified for the position; (3) he was discharged; and (4) "'the discharge occurred under circumstances giving rise to an inference of age discrimination.' "Woroski v. Nashua Corp., 41 F.3d 105, 108 (2d Cir. 1994) (citation omitted); accord Robinson, 21 F.3d at 508 (citing Levin v. Analysis & Technology, Inc. 960 F.2d 314, 316 (2d Cir. 1992); see also Burdine, 450 U.s. at 253 (plaintiff's burden of proof to establish prima facie case "is not onerous"); De La Cruz v. New York City Human Resources Admin. Dept. of Soc. Servs., 82 /F.3d 16m 29 (2d Cir. 1996) (only "low" level of proof required to state prima facie case of discrimination.)

If Mr. Robinson submits sufficient proof to establish a prima facie case, a presumption arises that his termination resulted from unlawful discrimination. See Burdine, 450 U.S. at 254; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 742 (1993). Verizon may rebut this presumption by proffering evidence of a legitimate, non-discriminatory reason for the challenged employment action. See Burdine, 450 U.S. at 254. If the employer meets this burden of production, the plaintiff must then show that here is a material issue of disputed facts as to whether the employer's proffered reason is a pretext for age discrimination. See Cronin v. Aetna

21

Life Ins. Co., 46 F.3d 196, 204 (2d Cir. 1995).

This Court must find that Mr. Robinson states a prima facie case of age discrimination based on Verizon's decision to eliminate the plaintiff from employment. It is undisputed that Mr. Robinson, whose age at the time he was terminated was within the protected age group. Verizon also does not dispute that it in fact discharged Mr. Robinson or that he was capable of performing his job. Given Mr. Robinson's long tenure with the company and his positive performance evaluations during his time with Verizon, the plaintiff demonstrated that he was qualified to perform.

Charles Robinson has shown that (1) that he was replaced by a worker who was younger than he was and  (2) that the circumstances surrounding the termination give rise to an inference of unlawful discrimination.

Plaintiff, Charles Robinson has direct proof of discrimination in the statement of Mr. Pilat the cartoon. Plaintiff also relies on "circumstantial" evidence that Verizon engaged in age discrimination when it terminated him from its employ. The decision of termination of July 1, 2001 before resumes were submitted. The Court must agree that the plaintiff, Charles Robinson submits sufficient evidence to sustain his de minims burden of stating a prima facie case of age discrimination.

As noted previously the decision makers used information in reaching the decisions regarding which employees Verizon would retain, used records which included the age of each of the people involved and length of service with the company, and retirement eligibility.

Even if this Court finds that Verizon successfully rebuts the plaintiff's prima facie

case by articulating a legitimate nondiscriminatory reason for terminating the plaintiff's employment, in that if it eliminated plaintiff's positions in the consolidation as part of a cost saving effort, a position with which plaintiff strongly disagrees, then this plaintiff who claims unlawful discrimination in the termination of employment may prevail notwithstanding the fact that his or her job was eliminated as part of a corporate reorganization or reduction in workforce, for "even during a legitimate reorganization or workforce reduction an employer may not dismiss employees for unlawful discriminatory reasons". Cronin, 46 F. 3d at 203 citing at 204 (quoting Maresco v. Hagelthorn v. Kennecott Corp., 710 F.2d 76, 81 (2d Cir. 1983). Mr. Robinson can show at his stage of the burden-shifting process that probable cause is appropriate because, "despite the employer's ostensible rationale and overall operations, intentional discrimination is the persuasive explanation for the plaintiff's treatment." Id. Mr. Robinson need not, however, show that age discrimination was the only factor in the employment decision, but only that it "was at least one of the 'motivating' factors." Cronin, 46 F. 3d at 203 (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 247, 249, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989); Hagelthorn, 710 F. 2d at 82, 86); see also Ostrowski v. Atlantic Mutual Ins. Cos., 968 F. 2d 171, 182 (2d Cir. 1992). Mr. Robinson's position was filled after he left Verizon.

Where, as here, Mr. Robinson has established his prima facie case through evidence that the terminations occurred in circumstances giving rise to an inference of discrimination, Mr. Robinson is permitted to rely on the same evidence to demonstrate pretext. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 38 (2d Cir. 1994) ("Pretext

23

may be demonstrated ... by reliance on the evidence comprising the prima facie case, without more." citations omitted; Cronin, 46 F. 3d at 203 same. Indeed, "unless the employer has come forward with evidence of a dispositive nondiscriminatory reasons as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a non-discriminatory reason reflects a question of fact to be resolved by the factfinder after trial." Cronin, 46 F. 3d at 203; see also St. Mary's Honor Ctr., 509 U.S. at 511 "The factfinder's disbelief of the reasons put forward by the defendant...may, together with the elements of the prima facie case, suffice to show intentional discrimination".

Mr. Robinson was the only person that had been identified for retirement and had qualified for same. He had both age and seniority. He was also questioned by Mr. Pilat on numerous occasions after he had joined his team in April of 2000: "You are old enough and you have the time...You would retire if an offer was made wouldn't you?" It got to the point that Mr. Robinson did not want Verizon to have this perception of him so he finally said to Mr. Pilat "Get that out of your head I'm too young to retire". Mr. Robinson also stated to Mr. Pilat that he had seen this type of questioning of Mr. Robinson in the past and Mr. Robinson objected to it. Mr. Robinson was handed a cartoon in his cubicle by Mr. Pilat stating that Mr. Robinson had been voted off the island. Mr. Robinson was also told during the summer of 2000 by Mr. Pilat that Mr. Robinson made more money than he did. This in fact was directly attributed to the merit raises that Mr. Robinson

24

received over the years. The protected age group accounted for 100% of the R.I.F. at this work location.

Mr. Robinson was solely targeted because of the span of control with the reduction of thirty (30) plus associates should have warranted that at least two team leaders be separated as well as an Area Operation Manager. Only Mr. Robinson was terminated.

Mr. Robinson was rated Exceeded/Met on all of objectives for 2000. Mr. Pilat also rated him at effective or greater in all of his core competencies in his year-end appraisal for year ending 2000. At no time in 2000 or 2001 was Mr. Robinson told that he was not performing at acceptable levels in regard to his peer group. In fact in 2001 he was told by Mr. Pilat and Mrs. D'Amato that they did not agree with the objectives that were given to them by their director, therefore Mr. Robinson was not given any objective. Mr. Robinson had excellent reviews throughout his career with Verizon. He also received awards and praise from Verizon.

Mr. Robinson's resume and interview allowed him to be chosen for the position of team leader because of his skills, fourteen (14) months earlier over numerous other candidates. Prior to his being asked for his resume, in either late May or early June he was brought into Mr. Pilat's office and was told that a contract worker was to be removed from the payroll. He asked Mr. Robinson if he would take the position but would no no have his direct reports. Mr. Robinson said yes, then after more consideration he realized that he was being set up for being removed from the payroll. He sent a memo to Mr. Pilat expressing his concerns that he did not like the feeling of being pushed aside.

25

He was allowed to maintain his direct reports but he knew once again that he was targeted for termination.

Mr. Robinson constantly asked Mr. Pilat for challenging assignments and requested specific training but was denied. He felt that he was not being utilized to the best of his capabilities. Mr. Robinson's entire resume should be looked at in total. The proven track record that he established in his thirty-one plus years, along with awards received as late s the year 2000 should have been taken into consideration. He had a proven track record as a manager for many years, whereas many of his peers were new. Mr. Robinson is and continues to be qualified as any of his peers in the team leader position.

We find it ironic that Mr. Robinson was the person who represented Mr. Pilat and Mrs. D'Amato, at regional monthly meetings to protect the interests of the Center and to resolve any outstanding issues with other work groups. Also, Mr. Pilat's own words show he valued Mr. Robinson as a qualified team leader.

It has also come to our attention that in December of 2001 the Company has since moved at least four (4) team leaders and one manager namely D'Amato from 6 Bowdoin Square to other jobs within the Company without them going through R.I.F. or having to apply to job posting that Mr. Robinson was subjected to. We believe this again is evidence that Mr. Robinson was specifically targeted.

Mr. Robinson was the only team leader terminated. He was over forty years old. His duties were given to employees under forty years of age.

26

Mr. Robinson's resume is formidable. Mr. Robinson's peers never went through a formal appraisal process. Therefore, how could they have significant accomplishments if they were not recognized for any significant accomplishments...i.e. receiving extra merit raises, awards etc. as Mr. Robinson was. If Mr. Robinson said he would make cows fly over the moon, would this have been accepted without going through the scrutiny of an evaluation process that would have given him substantial raised above and beyond anyone else? Mr. Robinson" year-end evaluation for 2000 stated that he exceeded or met all objectives. All of his skills were either rated "effective"or "greater"" How could he not be performing adequately? Mr. Robinson certainly had many years of superior
27
performances at Verizon. Mr. Robinson was targeted for termination because of his age. As late as June 8, 2001 he was touted by Mr. Pilate a "valuable, contributing solider in the army of Verizon". Verizon's reason for termination of Mr. Robinson is a pretext.

True comparison of resumes would lead to one conclusion. Mr. Robinson was equally talented and accomplished as his co-employees. Several of the kept employees repeat each other's accomplishments.

## CONCLUSION

The defendant, Verizon terminated Mr. Robinson who was over forty years of age. Out of the eleven (11) employees only he and Brenda Joy were over forty as of August 28, 2001. Verizon state for decades that Mr. Robinson was an exemplary employee and met and exceed all expectations. Verizon even gave Mr. Robinson additional responsibilities as late as June of 2001. It is incredible that two months later, Mr. Robinson in now inferior to his younger counterparts.

28

Finally, Mr. Robinson personnel folder was lost by Verizon. This is in direct violation of Massachusetts General Law.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY AS TO

PAGE 5 PARAGRAPH 2.

FRANK L. FRAGOMENI, JR., BBO #176990
ATTORNEY FOR THE PLAINTIFF
15 BROAD ST., SUITE 501
BOSTON, MA  02109
TEL. (617) 523-6511

28

CERTIFICATE OF SERVICE

I, Frank L. Fragomeni, Jr., Attorney for the plaintiff hereby certify that on the 17th day of November 2005 I forwarded a copy of the within pleadings, by hand, directed to defendant's counsel of record.

>       John P. McLafferty, Esq.
>       Day, Berry & Howard, LLP
>       One International Pl.
>       Boston, MA  02110

FRANK L. FRAGOMENI, JR., BBO #176990
ATTORNEY FOR THE PLAINTIFF
15 BROAD ST., SUITE 501
BOSTON, MA  02109
TEL (617) 523-6511