UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 04-11964-NG |
| | ) |
| TELESECTOR RESOURCES GROUP, INC. D/B/A | ) |
| VERIZON SERVICES GROUP, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## JOINT PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5, as well as the Court's Order dated August 29, 2006, the parties hereby submit their Joint Pretrial Memorandum. The parties reserve the right to supplement or revise any or all portions of this Joint Pre-Trial Memorandum prior to trial.

### I.    Trial Counsel

(a)    For Plaintiff:

Frank L. Fragomeni, Jr.
FRAGOMENI & CAREY
15 Broad Street, Suite 501
Boston, Massachusetts 02109
(617) 523-6511

(b)    For Defendant:

Felix J. Springer
John P. McLafferty
DAY, BERRY & HOWARD LLP
One International Place
Boston, Massachusetts 02110
(617) 345-4600

### II.    Jury Trial

The case is to be tried to a jury.

**III.**     <u>**Summary of the Parties' Positions on Liability and Damages**</u>.

a.     <u>Plaintiff</u>:

Charles Robinson was employed by Telesector Resources Group, Inc. d/b/a Verizon Services Group, (Hereinafter "Verizon") for approximately thirty (30) years in various positions, promoted several times and was a good, valuable and productive employee.

Charles Robinson was the only team leader terminated by Verizon effective on August 30, 2001.  At that time he was 51 years old. He was the oldest white male and the only person retirement eligible. Full retirement eligibility is age related. Verizon retained eleven (11) employees. Of these <u>eleven</u>  (11) employees retained, ten (10) were <u>younger</u> than Charles Robinson, not retirement eligible and most if not all were under (40) years of age. Mr. Robinson's duties were transferred to a Verizon internal   temporary, but long term hire who was younger than the plaintiff, Charles Robinson.

Mr. Robinson applied for other Verizon positions and was refused employment by Verizon.

Verizon states that it was reorganizing its units and needed to eliminate one position. Mr. Robinson requested documents to support how Verizon performed this process. Verizon provided only some documents but not the necessary R.I.F. form required. Verizon does not have more documentary proof.

Verizon praised Mr. Robinson for his productivity in memos as late as July of 2001.

The defendant, Verizon  requested resumes on July 9th and 10th 2001 <u>after</u>  the decision to terminate Charles Robinson was already made on July 1, 2001.

Thus it follows that Verizon terminated Mr. Robinson due to his age and his longevity with Verizon and his retirement eligibility.

Verizon does not indicate what "qualifications" determined its decision to either terminate or retain employees. It either lost or destroyed all documents which would support its stated reasons for termination of Charles Robinson which its own R.I.F. requires to be filled out.

Plaintiff, Charles Robinson was the highest paid, most experienced employee in his department. In fact Verizon's file for plaintiff shows his reviews were all excellent.

Verizon knew plaintiff was fifty-one (51) years old when it terminated him and that age discrimination is illegal.  Mr. Robinson was earning nearly $80,000.00 per year.

    b.    <u>Defendant</u>:

Plaintiff, Charles Robinson, alleges that his employer, Telesector Resources Group, Inc. D/B/A Verizon Services Group ("Verizon") eliminated his position in a reduction in force and terminated his employment in August 2001 because of his age.   The evidence will show that his claim is meritless. Rather, the evidence will show that Verizon decided to reduce the number of Team Leaders in its National Markets Center ("NMC") in Boston due to decreasing work volume, and that the decision not to retain select Plaintiff for one of the remaining Team Leader positions had nothing to do with Plaintiff's age.

In April 2000, Plaintiff, a Verizon employee since 1970, applied and was accepted for a position as a Team Leader in the NMC.   Despite the fact that he did not have any recent experience managing a staff, Area Operations Manager Henry "Hank" Pilat ("Pilat") selected Plaintiff for the open position.  The evidence will show that at the time Pilat selected Plaintiff, Plaintiff was 50 years old.

The evidence will show that the NMC in which Plaintiff worked existed to process service requests primarily from Competitive Local Exchange Carriers ("CLECs") seeking to use

-3-

Verizon's networks and facilities in order to service their (the CLECs') customers.  In summary, upon receiving a service order request from a CLEC, an NMC service representative reviewed and verified the information received, contacted the CLEC for missing or incomplete information, and entered the service order information into one of several Service Order Provisioning Systems ("SOPs").  If the order was properly processed in the appropriate SOP system, the representative received confirmation that the order was being "assigned" (i.e. that the SOP data entry was successful).  Once the order was "assigned," the CLEC was sent a Firm Order Commitment ("FOC") confirming the order and advising the CLEC of the date by which the equipment installation or other necessary actions would take place.

As a Team Leader in the NMC,  Plaintiff managed approximately 15 service representatives, and was responsible for ensuring the representatives were meeting FOC and other objectives, answering any questions related to processing CLEC service orders, and interfacing with certain CLECs assigned to him to ensure that the customer was satisfied.  The evidence will show that in order to be effective the Team Leaders within the NMC had to be well versed in the SOPs and other systems on which the service representatives worked.   Different SOP systems existed for different states serviced by the NMC.  None of the SOP systems were identical, and thus a valid entry in one system might be invalid in another.  In addition, each of the SOP systems had very specific formats for data entry in a given field.  Further, during 2000 and into 2001, the SOP systems lacked many up-front edits or guides to advise the user of input errors.  Consequently, data entries were regularly rejected, and the service representative would often be advised by the system of an error only after typing in all of the requested data, requiring the representative to go back to search for the invalid entry to resolve the problem.  If unable to resolve the issue, the representative went to a Team Leader for assistance

-4-

The evidence will show that over time Pilat observed deficiencies in Plaintiff's performance as compared to his fellow Team Leaders.  Specifically, Pilat observed that Plaintiff exhibited a negative attitude in meetings and on other occasions.  Further, Pilat noted that Plaintiff had not made sufficient efforts to learn SOPs, and the evidence will show that, relative to the other Team Leaders, Plaintiff was not as proficient in or as knowledgeable about the SOP systems.  Finally, Pilat became concerned that Plaintiff was not responding effectively to questions from his staff concerning SOPs when he became aware that Plaintiff's typical response to such questions was "Pretend I am not here. Tell me what you would do in this situation" or words to that effect.

The evidence will show that by early 2001, the NMC had grown from 80 to160 service representatives managed by 12 Team Leaders, one of whom was the Plaintiff.   During 2000 and early 2001, the NMC grew as Verizon implemented new systems to service requests from CLECs.   Over time, however, the mechanisms and procedures for processing orders were streamlined and the systems used for those activities became more automated.  Consequently, NMC work volume decreased significantly.

In or around June 2001, the NMC decided to end the employment of 42 of the 160 service representatives in the NMC.  Accordingly, in September 2001 the representative ranks were reduced by 26%, from 160 to 118.  As a result of the decrease in work volume and the anticipated reduction in the non-management ranks,  in or around June 2001, NMC management determined that a reduction in force of the Team Leaders was necessary.  In late June 2001, Pilat and fellow Area Operations Manager Claudia D'Amato were told by their Director, Patrick Stevens, that they would need to eliminate one Team Leader position and determine which 11 of the 12 current Team Leaders to retain.

The evidence will show that Pilat and D'Amato, consistent with Verizon policy, decided that in making the Team Leader selection decision they would rely on: (1) resumes created by the Team Leaders detailing their accomplishments and (2) their personal knowledge of each of the individual Team Leaders. In mid-July 2001, Pilat and D'Amato met to discuss the relative performance of the Team Leaders. Ultimately, Pilat and D'Amato determined that Plaintiff was the least valuable of the Team Leaders. Specifically, Pilat identified Plaintiff's lack of systems knowledge, negative attitude, and inability to develop his workforce as three areas in which Plaintiff was relatively less valuable than his peers. Based on her observations of Plaintiff's performance, D'Amato agreed with Pilat's assessment and Director Patrick Stevens approved the decision. The evidence will show that Pilat, D'Amato and Stevens did not consider Plaintiff's age in their decision not to select Plaintiff for one of the remaining Team Leader positions.

## IV.    **Facts Established by the Pleadings or Stipulation**

(a)    Plaintiff Charles Robinson was born on July 6, 1949.

(b)    Plaintiff was hired by New England Telephone, a predecessor of Verizon Services Group, on or about January 5, 1970.

(c)    In April 2000, Plaintiff interviewed with Area Operations Manager Henry Pilat ("Pilat") for a position as a Team Leader in Verizon's National Markets Center – Complex Services Department in Bowdoin Square in Boston (the "NMC").

## V.    **Contested Issues of Fact**

(a)    Plaintiff's Contested Issues of Fact/Facts As Presented By Plaintiff

1.      The plaintiff, Charles Robinson was terminated from the Verizon payroll on August 30, 2001 and the plaintiff Charles Robinson is complaining of that fact as age related after thirty (30) years with Verizon. (page 19, Charles Robinson's deposition and Affidavit )

2.      The plaintiff, Charles Robinson wrote practices and procedures for Verizon before his NMC position and did supervise personnel for Verizon on two (2) separate occasions prior to his NMC position including ten to twenty employees. (pages 30-31, Charles Robinson's deposition)

3.      The plaintiff, Charles Robinson had no training in S.O.P.  (page 39, Charles Robinson's deposition and Affidavit)

4.      Verizon failed to train the plaintiff Charles Robinson in S.O.P. procedures. Henry Pilat denied Mr. Robinson opportunity to go to classes to do so. (pages 70-72, Charles Robinson's deposition and Affidavit)

5.      The plaintiff Charles Robinson was told by Henry Pilat that Charles Robinson did not need to know how to write a S.O.P. Order. (pages 77-78, Charles Robinson's deposition)

6.      The plaintiff, Charles Robinson objected to how Verizon through Henry Pilat and Claudia D'Amato was treating internal Verizon CLECS in comparison to outside Verizon CLECS, giving preferential treatment to Verizon in detriment to its competitors. (pages 82-83, Charles Robinson's deposition)

7.      The plaintiff Charles Robinson was depicted as the Unicorn in the cartoon and "voted off the island" of Verizon which cartoon was handed to him by Henry Pilat and Claudia D'Amato and the  handwriting was already  present when

handed to him. Plaintiff, Charles Robinson did not disseminate it to others. (pages 107 through 110, Charles Robinson's deposition)

8.      On three (3) occasions Henry Pilat told the plaintiff, Charles Robinson that he was old enough to retire (page 109, Charles Robinson's deposition) and attempted to reduce his responsibilities very close in time to the R.I.F. (page 132, Charles Robinson's deposition and Affidavit) (pages 115 through 126, Charles Robinson's deposition and Affidavit)

9.      The plaintiff, Charles Robinson did all that he was asked by Henry Pilat and asked to be trained in S.O.P. numerous times, most recently in an e-mail right before the R.I.F. (pages 134 through 138 and page 141,Charles Robinson's deposition and Affidavit)

10.      Henry Pilat told the plaintiff, Charles Robinson he did not need to know S.O.P. (page 140, Charles Robinson's deposition)

11.      Right before the R.I.F. the plaintiff, Charles Robinson told Henry Pilat he was not ready to retire. (pages 142-143, Charles Robinson's deposition)

12.      Henry Pilat was showing preferential treatment to younger males right before the R.I.F. despite pornography and gambling charges against Mr. Aliberti and Mr. Blais in direct violation of Verizon's own Rules of Conduct. (pages 143-148, Charles Robinson's deposition)

13.      The plaintiff, Charles Robinson knew that his staff equaled his job security and Henry Pilat was going to take away Charles Robinson's staff. (page 137, Charles Robinson's deposition) (pages 160-164, Charles Robinson's deposition and Affidavit)

14.      The plaintiff, Charles Robinson was the oldest white male and the only one of

the twelve (12) Team Leaders retirement eligible. (page 186, Charles Robinson's deposition)

15.    The plaintiff, Charles Robinson believed he was discriminated against because of his age. He was never reprimanded by Henry Pilat for his performance. (pages 190-193, Charles Robinson's deposition)

16.    The plaintiff, Charles Robinson was asked to submit his resume to Henry Pilat on July 10, 2001. (pages 195-196, Charles Robinson's deposition and Affidavit)

17.    The plaintiff, Charles Robinson's resume was his recitation of his background and accomplishments. (pages 197-200, Charles Robinson's deposition)

18.    The plaintiff, Charles Robinson believes Lisa Smith, Adam Aliberti and Matt Blais were less qualified then The plaintiff, Charles Robinson. (page 216, Charles Robinson's deposition)

19.    Henry Pilat and Claudia D'Amato decided to terminate the plaintiff Charles Robinson the first week of July. (page 9, Henry Pilat's deposition), July 1st according to the R.I.F. form.

20.    They used only resumes and personal knowledge of the twelve candidates and not the personnel file of the plaintiff Charles Robinson with over thirty years of service. (page 10, Henry  Pilat's deposition)

21.    They requested resumes as late as July 10, 2001. (Defendant's Exhibits)

22.    Henry Pilat knew the plaintiff, Charles Robinson was fifty one (51) years of age at the time of termination and knew of the law of Age Discrimination. (page 11, Henry Pilat's deposition)

23.    Henry Pilat knew the plaintiff Charles Robinson was making the most money in the department at the time of termination and was the only one of the twelve (12)

Team Leaders retirement eligible. (page 14 Henry Pilat's deposition )

24.    The plaintiff Charles Robinson was the only team leader adversely affected by the decision to terminate the plaintiff. (page 14, Henry Pilat's deposition).

25.    Henry Pilat did not assist the plaintiff, Charles Robinson in getting employment at Verizon and did not tell Charles Robinson of opportunities in Verizon yet was communicating with him for other reasons. (page 20, Henry Pilat's deposition).

26.    Henry Pilat reviewed the plaintiff, Charles Robinson in <u>March</u> of 2001 and gave him an excellent comments and did not point to any deficiencies in the Charles Robinson's performance (page 25, Henry Pilat's deposition). The plaintiff, Charles Robinson was not the poorest appraisal of all of the team leaders at that time. (page 28, Henry Pilat's deposition)

27.    A R.I.F. guide was issued by Verizon (page 40, Henry Pilat's deposition).

28.    Henry Pilat knew that a retirement package was available to those retirement eligible before he terminated the plaintiff, Charles Robinson. (page 45, Henry Pilat's deposition)

29.    Henry Pilat was the person responsible for the R.I.F. documents. (page 49, Henry Pilat's deposition)

30.    Henry Pilat left blank on the R.I.F. form the reason the plaintiff Charles Robinson was terminated. (pages 50-55, Henry Pilat's deposition)

31.    The R.I.F. form associates with twelve (12) candidates was compiled on July 1, 2001. (pages 58 through 65, Henry Pilat's deposition)

32.    Henry Pilat knew Charles Robinson's age when Charles Robinson was terminated. (pages 60-62, Henry Pilat's deposition)

33.    Henry Pilat agrees that resumes should have been submitted prior to

July 1, 2001, yet they were submitted as late as July 10, 2001.

(page 66, Henry Pilat's deposition).

34.     Henry Pilat from his deposition does not dispute he may have labeled the animals in the cartoon yet his affidavit says he did not do so. He has no reason to doubt it is his handwriting. (pages 67 through 71, Henry Pilat's deposition)

35.     Henry Pilat does not remember talking to the plaintiff, Charles Robinson about age yet it could have occurred. (pages 72-73, Henry Pilat's deposition)

36.     In June 2001- Henry Pilat asked the plaintiff, Charles Robinson to assume new duties. (page 76, Henry Pilat's deposition)

37.     In July 2001 – Henry Pilat terminated the plaintiff, Charles Robinson due to a knowledge of a R.I.F. in June to July 2001. (page 77 and page 82, Henry Pilat's deposition)

38.     Henry Pilat never used Verizon Code of Business Conduct relating to the plaintiff, Charles Robinson. (page 87, Henry Pilat's deposition)

39.     On line resumes were fine for some candidates but not for the plaintiff, Charles Robinson. (pages 87-88, Henry Pilat's deposition)

40.     Plaintiff Charles Robinson's ethics violation did not play a role in his termination. (pages 88-89, Henry Pilat's deposition)

41.     Henry Pilat used three (3) criteria for terminating the plaintiff Charles Robinson. System Skills, All Staff and Product Knowledge.  (page 91, Henry Pilat's deposition)

42.     Henry Pilat never skilled the plaintiff Charles Robinson in these issues (pages 94-96, Henry Pilat's deposition) and never cited these as deficient.  (pages 97-98, Henry Pilat's deposition)

43.     The part of the R.I.F. document asserting why plaintiff, Charles Robinson

was terminated is missing (page 110, Henry Pilat's deposition) and the main page is dated  October 19, 2001. (page 111, Henry Pilat's deposition)

44.    Henry Pilat's affidavit states that the plaintiff, Charles Robinson did not job shadow yet his deposition states that he did. (pages 112 through 114, Henry Pilat's deposition)

45.    Plaintiff, Charles Robinson was notified in August that he was not to be retained. (page 115, Henry Pilat's  deposition)

46.    Henry Pilat only e-mailed the plaintiff, Charles Robinson regarding additional duties and not the other eleven (11) Team Leaders. (page 116, Henry Pilat's deposition)

47.    The R.I.F. – Henry Pilat was to enforce had no reason other than to reduce by one (1) the Team Leader's position said to "lose a body". (pages 117-121, Henry Pilat's deposition)

48.    All twelve (12) Team Leaders were in the same working level (4). (page 121, Henry Pilat's deposition)

49.    The plaintiff, Charles Robinson the person eliminated by Henry Pilat was making the most money and had the most seniority, and was the oldest white male.  (pages 122-123, Henry Pilat's deposition)

50.    Henry Pilat considers Susan Rober, Claudia D'Amato and Patrick Podulski as friends. (pages 123-124, Henry Pilat's deposition)

51.    Henry Pilat cannot answer Interrogatory No. 3 and Interrogatory No. 4. (pages 125-129, Henry Pilat's deposition) (pages 136-137, Henry Pilat's deposition) which ask specific questions about discussions with the plaintiff, Charles Robinson about his

performance and retention or termination.

52.    Henry Pilat told the plaintiff, Mr. Robinson he was not selected but gave no reasons. He told Mr. Robinson that he had thirty (30) more days with Verizon. (pages 129-130, Henry Pilat's deposition)

53.    The plaintiff, Charles Robinson was not selected, then Verizon released (terminated) him from the payroll thirty (30) days later. (pages 131 through 134, Henry Pilat's deposition)

54.    The plaintiff, Charles Robinson was affected  differently than the other eleven (11) Team Leaders by the R.I.F. (pages 134-136, Henry Pilat's deposition)

55.    Henry Pilat never interviewed the twelve (12) candidates but only told them in a group that resumes and personal knowledge of Henry Pilat would determine which of the twelve (12) candidates would be terminated. (pages 138-140, deposition of Henry Pilat)

56.    Henry Pilat established no training for the plaintiff, Charles Robinson and nothing establishes that plaintiff Charles Robinson was adequately trained by Verizon. (page 148, Henry Pilat's deposition)

57.    Service representatives could go to any Team Leader for questions not just their own Team Leader. (page 149, Henry Pilat's deposition)

58.    The plaintiff, Charles Robinson was never demoted nor received a pay cut and did get a merit raise immediately before termination for good performance. (pages 151-158, Henry Pilat's deposition)

59.    Verizon's policy for insufficient performance was to place employees on a "performance improvement plan" and the plaintiff, Charles Robinson was never so placed. (page 152, Henry Pilat's deposition)

60.    The plaintiff, Charles Robinson replaced Tiffany Blake who

-13-

"retreated", that is she went back to her former position, and the plaintiff Charles Robinson was never told he could retreat.   (page 153, Henry  deposition)

61.    Adam Aliberti (28 years old), one of the Team Leader's chosen, was disciplined and reprimanded by Verizon prior to his selection for disseminating pornography. (pages 159-160, Henry Pilat's  deposition)

62.    Matt  Blais (28-30 years old), one of the Team Leader's chosen, was disciplined and reprimanded by Verizon prior to his selection for gambling. (pages 161-162, Henry Pilat's  deposition)

63.    Henry Pilat appointed the plaintiff, Charles Robinson as his representative of the NMC to various groups outside of Verizon including  GTE and never rescinded said appointment.

64.    Verizon could not produce the plaintiff Charles Robinson's personnel file as it was lost and this was an unusual occurrence. (pages 182-183, Henry Pilat's deposition)

65.    On October 16, 2001 the plaintiff, Charles Robinson asked why he was terminated and was never told those reasons.  (page 185, Henry Pilat's deposition)

66.    Henry Pilat cannot dispute the plaintiff, Charles Robinson's Answers to Interrogatories. (page 191, Henry Pilat's deposition)

67.    Henry Pilat considered the plaintiff, Charles Robinson a "valuable contributing soldier" to Verizon.  (page 192, Henry Pilat's deposition)

68.    Henry Pilat did nothing to assist the plaintiff Charles Robinson in finding Verizon employment. (page 196, Henry Pilat's deposition)

69.    Henry Pilat did not like the plaintiff, Charles Robinson.


(b)    <u>Defendant's Contested Issues of Fact</u>

-14-

      1.      Whether Plaintiff's Team Leader position was eliminated and he was not selected for retention as a Team Leader because of his age?

      2.      Whether Plaintiff suffered any damages as a result of any allegedly wrongful conduct of Verizon?

      3.      Whether Plaintiff has mitigated any damages suffered?

      4.      Whether Plaintiff filed this lawsuit within three years after the date of the alleged age discrimination?

## VI.    Jurisdictional Questions

There are no jurisdictional issues to be addressed.


## VII.    Issues Of Law, Including Evidentiary Issues

    (a)    Plaintiff's Issues of Law

        Same as Defendant's Issues of Law.

    (b)    Defendant's Issues of Law

        (i)      Whether the Plaintiff can prove by a preponderance of the evidence that Verizon did not select him for retention in his Team Leader position because of his age, in violation of Mass. Gen. Laws ch. 151B?

        (ii)      Whether the Plaintiff can prove by a preponderance of the evidence that he is entitled to damages as a result of the alleged discrimination, and if so, what is the amount of such damages?

The Defendant does not anticipate any unusual legal issues to arise during the course of trial, and agrees that the law of Massachusetts regarding age discrimination pursuant to Mass. Gen. Laws ch. 151B applies to Plaintiff's claims.

The Defendant's motion in limine is submitted herewith.  The Defendant reserves the right to file additional motions in limine, as necessary, prior to trial, as additional issues unforeseen by the parties arise in the course of trial, or for good cause shown.

**VIII.**   **Requested Amendments To The Pleadings**

The parties do not anticipate seeking to amend any pleadings prior to trial.

**IX.**   **Additional Matters To Aid In The Disposition Of The Action**

None.

**X.**   **Probable Length Of Trial**

The parties anticipate that they will require four to six half-day sessions to present their cases.  This estimate does not include impanelment and opening or closing statements.

**XI.**   **Voir Dire Procedures**

(a)   Proposed Jury Selection Procedures

The parties intend to submit to the court proposed voir dire questions prior to the commencement of trial.

(b)   Names and Addresses of Witnesses to Be Read to the Potential Venire

The names of the parties' proposed witnesses are noted below in Section XII of this Joint

Pretrial Memorandum.


(c)     Proposed Description of the Case to Be Read to Potential Venire

This case involves a former employee of Verizon, Charles Robinson, who alleges that he

was terminated from Verizon because of his age.  Specifically, Mr. Robinson alleges that his

position as a Team Leader was eliminated in a reduction-in-force in August 2001 and that he was

not selected for one of several remaining Team Leader positions.  At that time Mr. Robinson was

52 years old.  Mr. Robinson contends that, as a result of the alleged age discrimination, he has

suffered lost wages and emotional distress.

Verizon denies that it terminated Mr. Robinson's employment because of his age.

Verizon contends that in the summer of 2001 it decided to reduce the number of Team Leaders

in the location where Mr. Robinson worked because of decreasing work volume.  Verizon states

that Mr. Robinson's manager, Henry Pilat and another manager, Claudia D'Amato, reviewed

resumes created by each of the Team Leaders and discussed their personal knowledge of each of

the Team Leaders.  Verizon contends that based on this review, Mr. Pilat and Ms. D'Amato

concluded that Mr. Robinson was not as effective as the other Team Leaders.  Accordingly, they

did not select Mr. Robinson for any of the remaining Team Leader positions, and Mr. Robinson's

employment with Verizon ended in August 2001.  Verizon denies that Mr. Robinson's age

played any part in its decision not to select Mr. Robinson for a Team Leader position, and deny

that Mr. Robinson is entitled to any damages.


## XII.   Witness Lists

The parties anticipate that they may call all or some of the following witnesses listed

below, and some or all of the witnesses listed by the opposing party. The parties reserve the right to supplement this list as evidence and testimony are introduced at trial, for good cause shown, or pending the court's ruling on their motions in limine and/or any pending motions. The parties further reserve the right to amend their witness lists to call additional witnesses, if necessary, to rebut the testimony offered by the opposing party's witnesses.

(a)    <u>Plaintiff's Fact Witnesses:</u>  The plaintiff intends to call the following witnesses:

Same witnesses as Defendant intends to call. In addition, Plaintiff intends to call the following witnesses:

       (i)    Luigi Leone

       (ii)    Addisson Martin

           <u>Defendant's Objection</u>:  The Defendant objects to the testimony of this witness because Plaintiff has not previously disclosed this witness in his initial disclosures or in response to Defendant's interrogatories as an individual having knowledge relevant to Plaintiff's claims.

(b)    <u>Defendant's Fact Witnesses:</u>  The Defendant anticipates calling the following witnesses:

       (i)    Plaintiff, Charles Robinson

       (ii)    Henry ("Hank") Pilat

       (iii)    Claudia D'Amatao

       (iv)    Patrick Stevens

       (v)    Susan Powderly

       (vi)    Patrick Podolske

   (vii) Susan Rober

   (viii) Paul Lynch

   (ix) Keepers of Records, Verizon

   (x) Keeper of Records, Utility Consultants, Inc.


  (c) <u>Expert Witnesses</u>

  The parties have not identified and do not anticipate calling any expert witnesses to testify at trial.


## XIII. <u>Exhibit Lists</u>

  The parties expressly reserve the right to amend these exhibit lists up to the time of trial. The parties further reserve the right to use charts or enlargements during the course of trial as needed.  In addition, the parties expressly reserve the right to offer exhibits not listed below for rebuttal and impeachment at the time of trial.

  (a) <u>Agreed Upon Exhibits</u>

    1. RIF Form A

    2. RIF Form B

    3. Verizon Business as Usual RIF User's Guide

    4. Table Listing Ages of Team Leaders

    5. June 7-8, 2001 E-mail String Regarding Assignment of Work

    6. Unicorn Cartoon

    7. Internal Verizon Resume of Charles Robinson

    8. Internal Verizon Resume of Adam Aliberti

    9. Internal Verizon Resume of Matthew Blais

    10. Internal Verizon Resume of Janeeque Burton

11.    Internal Verizon Resume of Malika Edmonds

12.    Internal Verizon Resume of Jean Freeman

13.    Internal Verizon Resume of Brenda Joy

14.    Internal Verizon Resume of Luigi Leone (e-mail)

15.    Internal Verizon Resume of Roy Peterson

16.    Internal Verizon Resume of Patrick Podolske

17.    Internal Verizon Resume of Susan Rober

18.    Internal Verizon Resume of Lisa Smith

19.    Verizon ECR Turnaround dated 8/29/01

20.    Verizon Code of Conduct

21.    Bell Atlantic Code of Conduct

22.    2001 Tax Return and associated documents

23.    2002 Tax Return and associated documents

24.    2003 Tax Return and associated documents

25.    Management Performance Appraisal of Charles Robinson

26.    Affidavit of Henry Pilat in MCAD matter


(b)    <u>Contested Exhibits</u>

(i)    <u>Plaintiff's Contested Exhibits</u>

A.    Relevant portions of deposition of Henry Pilat

<u>Defendant's Objection</u>:   With the understanding that this proposed exhibit constitutes those portions of the deposition of Henry Pilat appended to Plaintiff's Opposition to Defendant's Motion for Summary Judgment in this matter, the Defendant objects to the admission of these deposition excerpts because: (1) they contain numerous questions to which the Defendant objected at the time of the deposition, those objections not having been ruled on by the Court; (2) many of the excerpts are

incomplete and/or taken out of context;  and (3) they contain certain statements that constitute inadmissible hearsay.

B.    Documents to Charles Robinson and from Verizon after termination

Defendant's Objection:  With the understanding that this proposed exhibit constitutes Exhibit K appended to Plaintiff's Opposition to Defendant's Motion for Summary Judgment in this matter, the Defendant objects to the admission of these documents because: (1) one of the documents in this exhibit is a letter from Plaintiff to Verizon and constitutes inadmissible hearsay;  (2) the other two documents in this proposed exhibit relate to Verizon's response to Plaintiff's requests, made after his last day at work,  for a copy of his personnel file, an issue that is not relevant to Plaintiff's claims.

C.    Defendant's Response to Plaintiff's Interrogatories

Defendant's Objection:  The Defendant objects to the admission of its responses and answers to interrogatories in this matter because they contain numerous questions to which the Defendant objected at the time of the interrogatories, those objections not having been ruled on by the Court.

D.    Calculation for severance

Defendant's Objection: The Defendant objects to this proposed exhibit because the amount of severance Plaintiff would have received had he executed a release of claims against Verizon is irrelevant to this matter, and the admission of such evidence would unfairly prejudice Verizon.  Moreover, this exhibit should be excluded pursuant to Fed. R. Evid 408 because it constitutes evidence of an offer to compromise a claim.

E.    Personnel File of Charles Robinson.

Defendant's Objection: The Defendant objects to this proposed exhibit because the vast majority of Plaintiff's personnel file is unrelated to Plaintiff's work as a Team Leader in the National Market Center, and is therefore not relevant to the decision not to retain Plaintiff in that position.  Further, any probative value of this exhibit is substantially outweighed by the risk the matters

-21-

documented in Plaintiff's personnel file are likely to confuse the jury and unfairly prejudice Verizon. Finally, many of the documents contained in Plaintiff's personnel file contain multiple levels of inadmissible hearsay. The Defendant remains willing to consider the admission of certain relevant documents contained within Plaintiff's personnel file.

      (ii)    <u>Defendant's Contested Exhibits</u>

          None.

## XIV.  <u>Proposed Preliminary Jury Instructions</u>

The Defendant's proposed preliminary jury instructions to be read to the jury at the beginning of trial are filed herewith. The parties reserve the right to submit final proposed jury instructions to be read to the jury at the close of evidence.

Respectfully submitted,

The Plaintiff,  
CHARLES ROBINSON,  
By his attorneys,

The Defendant,  
TELESECTOR RESOURCES GROUP, INC.  
D/B/A VERIZON SERVICES GROUP,  
By its attorneys,

/s/ John P. McLafferty  
Frank L. Fragomeni, Jr., BBO # 176990  
FRAGOMENI & CAREY  
15 Broad Street, Suite 501  
Boston, Massachusetts 02109  
(617) 523-6511

/s/ John P. McLafferty  
John P. McLafferty, BBO #639179  
Felix J. Springer (pro hac vice)  
DAY, BERRY & HOWARD LLP  
One International Place  
Boston, Massachusetts 02110  
(617) 345-4600

DATED: September 27, 2006

## <u>CERTIFICATE OF SERVICE</u>

      I, John P. McLafferty, do hereby certify that on this 27th day of September, 2006, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing(s) to the following:  Frank L. Fragomeni, Jr., Esquire, 15 Broad Street, Suite 501, Boston, Massachusetts 02109.

                              /s/ John P. McLafferty
                              John P. McLafferty